GRAHAM, APPELLEE, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS. •

BURMEISTER, APPELLEE, *v.* DAY ET AL., BD. OF COUNTY COMMRS. APPELLANTS.

GRAHAM, APPELLEE, *v.* DAY ET AL., BD. OF COUNTY COMMRS., · APPELLANTS.

STUCKA ET AL., APPELLEES, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS.

HESSENTHALER ET AL., APPELLEES, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS.

MILLER, APPELLEE, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS.

POTTER ET AL., APPELLEES, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS.

LIMPERT ET AL., APPELLEES, *v.* DAY ET AL., BD. OF COUNTY COMMRS., APPELLANTS.

[Cite as Graham v. Day, 12 Ohio App. 2d 9.]

(Nos. 28238, 28239, 28240, 28241, 28242, 28243, 28244 and 28245— Decided October 12, 1967.)

10

*Messrs. Walter, Haverfield, Buescher & Chockley* and *Mr. Jules Eshner,* for appellees.

· *Mr. John T. Corrigan,* prosecuting attorney, *Mr. A. M. Braun, Mr. John L. Dowling* and *Mr. Richard A. Goulder,* for appellants.

CORRIGAN, C. J. An appeal on questions of law is made herein by the Board of County Commissioners of Cuyahoga County from a judgment of the Probate Court in which the special assessments levied on plaintiff-appellees' properties were found to be confiscatory and hence void and were modified, and, as to one parcel, eliminated.

These actions were originally appealed to the Probate Court by the property owners under favor of Sections 6117.09 and 6117.10, Revised Code, from a decision of the Board of County Commissioners of Cuyahoga County in determining to proceed with the County Sewer District Improvement No. 12-A-1, under Chapter 6117, Revised Code.

Two claims of error are assigned, the first of which urges that:

"The trial court erred in holding the assessment on appellee's property is confiscatory and void and in reducing the assessment on appellee's property."

The general rule in regard to special assessments is clearly stated in 49 Ohio Jurisprudence 2d 243, Section 7:

"The underlying theory is that the special benefits received are in remuneration of the special assessments levied. Accordingly, the very foundation of the power to lay a special assessment for a public improvement is the special benefits which the object of the assessment confers, and a special assessment is, therefore, lawful or constitutional only when founded upon special benefits accruing from the improvement for which the assessment is laid. Under the Constitution, the public has no power to make a special assessment where no benefit is conferred, and without a special benefit, there is no foundation for the assessment and no jurisdiction to make it. Nor may a special assessment exceed the special benefit to the property assessed, except by the agreement and consent, or the estoppel, of the owner of the property. If it does, it consti-

tutes a violation of the constitutional prohibition against the taking of private property for a public use without compensation, and an injunction will lie if the amount of the excess is substantial and material and is clearly and convincingly shown.

"The Ohio courts have made it very clear that the benefits resulting to a private property from the construction of a public improvement, which may be made the basis of an assessment, must be *special benefits,* by which is meant benefits above and beyond those which are enjoyed in common with the public at large or with the rest of the community. * * *"

One case supporting this doctrine is that of *Walsh* v. *Barron, Treas.,* 61 Ohio St. 15, which provides in paragraph one of the syllabus:

"The fundamental principle underlying an assessment made on property for the cost and expense of a local public improvement is, that the property is specially benefited by the improvement beyond the benefits common to the public, and that a ratable assessment of the property to the extent of these benefits violates no constitutional right of the owner, and is just and proper. But it can in no case exceed the benefits without impairing the inviolability of private property."

Further support is found in paragraph one of the syllabus in *Domito* v. *Maumee,* 140 Ohio St. 229, which holds:

"A purported assessment for a public improvement levied against private property, which is substantially equal to or greater than the value of the property after the improvement is made, constitutes the taking of property for public use without compensation, in contravention of. Section 19, Article I of the Constitution of Ohio, and the owner may enjoin its collection in a court of equity upon the ground of invalidity."

In 2 Cooley, Taxation (3 Ed.) 1153 and 1154, is found the following statement on the subject:

"Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The jus-

tice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay.''

Cooley further says (in 3 Cooley, Taxation [3 Ed.], Section 1068):

''It is also generally made imperative that separate and distinct parcels of land shall be assessed separately. * * *.''

The record before us clearly supports the holding of the Probate Court.

The concept of assemblage was used in this case in appraising ten out of the twelve parcels in question wherein the assessed valution of each parcel was arrived at by valuing it grouped with a contiguous parcel or parcels owned by others, thereby giving the parcel to be appraised a substantial increase in value. The validity of the assessments seems to rise or fall on the legality of such theory.

The lower court had the following to say in this regard:

''While no case has been cited by counsel and none found by the court, it seems quite elemental that the chance, opportunity, proximity or other factor that would make it possible for a property owner to join with his neighbor, or neighbors, in forming a so-called 'assemblage' in order to give his property added value, deserves no consideration in these cases. This theory is highly speculative and places the burden upon the owner to seek association or partnership with another or others, before his land would attain a substantial increment in value because of the sewer improvement. There is no rule of law that would require one person to contract with another in an assemblage of property, even though it might be to great mutual advantage. A more reasonable approach to the question of best possible use is a determination of what can be done with the property by improvements which are reasonably attainable and which can enhance the value under all present circumstances or those foreseeable in the very near future.''

There is a paucity of authority available as a precedent for the use of such theory of assemblage which the Probate Court rejected.

The only annotation that will be found remotely bearing on this question is in 64 Corpus Juris Secundum 772, Municipal Corporations, Section 2049. It reads as follows:

"*Aggregate valuation of several properties.* Although generally a taxpayer is entitled to have each separate tract or parcel of land separately valued and assessed, where two or more tracts or parcels are occupied and used together by the property owner for a single purpose their separate identities become merged into one and they may be valued and assessed in solido, and it has been held that, where there is no statutory definition of the lot or parcel of land that is the lawful unit for purposes of taxation, contiguous parcels of land, although divided on a plan, may be assessed separately or as a unit. Under some circumstances the rule may even apply to contiguous lots used for a single purpose even though such lots are owned by different persons. Certainly where the statute or charter authorizes it the value of several lots may be lumped and assessment made for the aggregate amount, even though they are not adjoining lots or in any way connected with each other, provided only the lots are properly designated."

One of the cases cited therein is *Edinburg* v. *Magee* (Tex. Civ. App.), 97 S. W. 2d 983, wherein it is said:

"With reference to the first contention, although the general rule is that the taxpayer is entitled to have each separate tract or parcel of land separately valued, and assessed for taxes, and the tax lien separately fixed upon each so that one tract may not be charged or sold to satisfy the taxes upon another or other tracts *(Richey* v. *Moor,* 112 Tex. 493, 249 S. W. 172), yet it is now equally well settled that where two or more tracts or parcels are occupied and used together by the property owner for a single purpose, such as a homestead, their separate identities become merged into one by such use, and they may be valued and assessed in solido, and the tax lien may be fixed and foreclosed upon all as one parcel. * * *"

Then there is the case of *People, ex rel. Bray,* v. *Golder,* 83 N. Y. Supp. 2d 186, which provides (in paragraph one of the headnotes):

"City tax assessors were justified in combining four separately assessed continguous lots, three of which were owned by one decedent's estate and the other by another decedent's

estate, into one parcel for purpose of assessment, where owners permitted erection thereon of one common building, owned by corporation, all stock of which was owned by one of such estates.''

See, also, 14 McQuillin on Municipal Corporations 270, Special Taxation and Local Assessments, Section 38.116.

It is our view, and we so hold, that the Probate Court was correct in rejecting the assemblage theory and in modifying the assessment on the following properties:

Permanent Parcels No.

212-19-5  owned by Carl, Herbert and Julia Limpert
212-20-1  owned by Carl, Herbert and Julia Limpert
212-28-4  owned by Carl, Herbert and Julia Limpert
212-20-7  owned by Carl, Herbert and Julia Limpert
212-20-3  owned by Carl, Herbert and Julia Limpert
212-28-5  owned by Carl, Herbert and Julia Limpert
215-14-17 owned by Carl, Herbert and Julia Limpert
212-20-2  owned by John and Catherine Stucka
215-14-26 owned by Julius and Elizabeth Hessenthaler
212-26-5  owned by Lillian D. Graham
212-26-8  owned by Robert A. Graham
212-30-4  owned by Elinor E. Burmeister.

It is further our view, and we likewise hold, that the Probate Court was correct in its order modifying the assessment on Permanent Parcel No. 212-14-3, owned by Josephine Potter, Lloyd Hurst and Harold Hurst.

It is also our view, and we likewise hold, that the Probate Court correctly ordered the entire second assessment on Permanent Parcel No. 211-19-9, owned by Leonard Miller, to be confiscatory and void.

The second claim of error assigned is as follows:

''The court erred in extending continuing jurisdiction over this case for an indefinite time in the future.''

The journal entry of the Probate Court included the following order:

''It is further ordered, adjudged and decreed that this court shall, and it does, retain continuing jurisdiction as to all parcels in which the court has reduced the assessment because of the present layout, location, or condition of the parcel and

the subject matter will be reexamined and the judgment reopened in the event that a present owner, or his successors or assigns, in combination with another or in assemblage with other property, further enhances the value of any parcel herein being considered, except the parcel of Leonard Miller.''

Obviously, nothing is provided in Chapter 6117, Revised Code, that would give the Probate Court continuing jurisdiction in such proceedings, such as it sought to effectuate in its journal entry. Simply, this statute does not grant that court the authority to retain jurisdiction to re-examine an assessment at some indefinite future date.

Nor does the use of the word, "equitable," in its context in Section 6117.24, Revised Code, confer such continuing jurisdiction.

It is worthy of noting in this connection that by the provisions of Section 6117.061, Revised Code, upon the timely application of a property owner who is to be assessed for an improvement under Sections 6117.01 to 6117.45, Revised Code, the authority to defer such assessment is vested in the board of county commissioners and "The decision of the board on any request for deferment shall be final and no appeal therefrom may be taken.''

Therefore, it is our determination, and we so hold, that claim of error No. 2 is well taken and the order of the Probate Court quoted *supra* is reversed as contrary to law and held for naught, and the journal entry of October 6, 1966, shall be modified by striking therefrom the order quoted *supra*, as it appears as the last partial paragraph on page 3 thereof and continuing as the first partial paragraph on page 4 thereof.

Subject to this latter modification, the judgment of the Probate Court is affirmed.

*Judgment accordingly.*

SILBERT and WHITE, JJ., concur.